IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHERRY BROS., LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHOICE PRODUCTS USA, LLC., et al. | : | 11-3253 |

M E M O R A N D U M

M. Faith Angell, U.S.M.J.                                                                 October 26, 2011

      This action arises out of a failed business relationship between Cherry Bros., LLC ["Cherrydale"] and Club's Choice, both of which are in the fundraising product sales business. In its complaint, Plaintiff Cherrydale alleges that, beginning in December 2008, it entered into a series of understandings and verbal and written agreements with Club's Choice in which the parties agreed to sell each other's products and, for agreed fees, provide each other various services including, *inter alia*, Club's Choice packaging, labeling and shipping all products sold by both companies. *Complaint* [Docket #1] at p. 3. Cherrydale brings this action against Club's Choice, Richard McHugh [President and major shareholder of Club's Choice] and Glen McHugh [Vice President of Club's Choice] alleging breach of contract and fraud. Presently before this Court is a motion by Defendants Richard McHugh and Glen McHugh to dismiss the fraud claim against them under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] After considering the submissions of the parties, and for the reasons below, the motion to dismiss the fraud claim against the individually named Defendants is granted. I will also grant Plaintiff's request for leave to file an amended complaint.

---

[1] The parties have consented, with the approval of the Honorable Norma L. Shapiro, to have me conduct all proceedings in this case including trial, the entry of final judgment, and all post-judgment proceedings. *See Consent and Order to Jurisdiction by US Magistrate Judge* [Docket #17].

**I. Background**.

The following is a summary of the allegations in the Complaint, which I must accept as true when deciding a motion under Rule 12(b)(6).  *See U.S. ex rel. Pilecki-Simko v. The Chubb Institute*, No. 10-3907, 2011 WL 3890975 at *4 (3d Cir. September 6, 2011)("When reviewing a motion to dismiss, we construe the complaint 'in the light most favorable to the plaintiff'.").

For more than 100 years, Plaintiff Cherrydale has helped organizations (such as schools and charitable groups) with their fundraising efforts by providing a complete offering of products and services including premium chocolates and confections, magazine subscriptions, giftware, candles, frozen foods and jewelry.  Cherrydale products are sold to consumers through catalogs distributed by students and members of participating organizations ["the sales force"].  Fundraising programs typically run in two seasons - Spring and Fall.

Defendant Club's Choice is also in the fundraising product sales business.  It targets frozen foods such as pizza, sausages and cookies.  *Complaint* at pp. 1-2.

Beginning in December 2008, Cherrydale and Club's Choice entered into a series of agreements, both written and verbal, in which the parties agreed to sell each others products ["the Service Agreements"].  It was agreed, *inter alia*, that Cherrydale would process all order forms, and Club's Choice would package, label and ship all products sold by both companies (pursuant to agreed-upon procedures set forth in an "Operations Manual").

For the period from January 1, 2009 through November 2010, Cherrydale's sales force generated over $6.5M in sales of Club's Choice Products.  Through December 2010, Cherrydale paid Club's Choice in excess of $1.8M for the products and services provided by Club's Choice under the Service Agreements.

Cherrydale alleges that Club's Choice overcharged Cherrydale for products and services it provided and refused to pay for services and products provided by Cherrydale. *Id.* at pp. 3-5.

In its two count complaint, Cherrydale asserts (in Count 1: breach of contract) that Defendant Club's Choice "is obligated and required under the Parties' Service Agreements to pay to Cherrydale all amounts due for products, goods, royalties and commissions described above, in the amount of $218, 645.65. As more fully described above, Club's Choice violated the Parties' Service Agreements by overcharging Cherrydale for freight and by failing to handle and ship the products pursuant to the Operations Manual and otherwise in violation of the Parties' Service Agreements and industry standards. As a result of Club's Choice violations, Cherrydale was overcharged and/or wrongly charged $268, 410.99." Cherrydale also seeks additional damages in the form of lost business, business reputation and goodwill as a result of Club's Choice's breach of its agreements and failure to ship in accordance with the Operations Manual. *Id.* at p. 14.

In Count 2, Cherrydale alleges that all Defendants (Club's Choice, Richard W. McHugh and Glenn McHugh) are liable for fraud for the following acts:

> (1)  When the parties entered into their Service Agreements, Club's Choice and the McHughs made false representations (that Club's Choice would charge shipping and packaging rates as agreed upon and would invoice Cherrydale appropriately). These false representations were material to the Service Agreements because Club's Choice knew that Cherrydale would not be present at Club's Choice's warehouse at all times or otherwise able to monitor the charges. The consequent billings and charges imposed by Club's Choice were false and fraudulent.
>
> (2) "McHughs made and/or directed their employees to make additional false statements and/or misrepresentations to Cherrydale in furtherance of their fraudulent overbilling scheme and an effort to conceal the fraudulent charges and

pressure Cherrydale to succumb to Club's Choice's improper conduct and charges." Three examples are alleged by Cherrydale:

> (A)  In April 2010, Richard McHugh informed Cherrydale during a telephone conference that Club's Choice refused to release expense reports and categories which Club's Choice knew were immediately required by the auditors of Cherrydale's lenders.  McHugh refused to release this information unless Cherrydale paid an exorbitant and improper $27, 000.00 fee for pre-packaging of prizes (a charge that was not part of the agreed upon terms in the Service Agreements).  The delay and demands were made to inhibit Cherrydale from discovering the fraudulent charges and Club's Choice's practices.
>
> (B) In August 2010, with absolutely no basis, McHugh and Club's Choice refused Cherrydale access to its products stored in Club's Choice's warehouse even though McHugh and Club's Choice were aware that Cherrydale's lender required access to satisfy its asset based lending agreement, Cherrydale was not in arrears for any storage or other charges, and Cherrydale needed to ship product and generate receivables crucial to its financing arrangements.  The refusal to release inventory was motivated by Club's Choice's efforts to compel Cherrydale to agree to Club's Choice's overcharges.
>
> ( C) On August 16, 2010, Glen McHugh and Club's Choice purported to reject all of Cherrydale's outstanding purchase orders for product and threatened to file a trademark violation action against Cherrydale if it used the Club's Choice's logo in catalogues, despite a previous agreement to allow Cherrydale to use Club's Choice's logo.  The threats were made at a time when McHugh and Club's Choice knew that Cherrydale had already printed and distributed catalogues to tens of thousands of students and had sold product based upon the catalogues. The McHughs refused to relent unless Cherrydale agreed to an extortionist "credit" in the form of an assignment of sales of $87, 500.00 to serve as a potential source of monies to Club's Choice if it was ultimately determined that monies were owed by Cherrydale to Club's Choice.

*Complaint* at pp. 15-18.

**II. Analysis.**

Presently before the Court is a motion to dismiss Count 2, the fraud count, against the individually named Defendants [hereinafter "the McHugh Defendants"]. The McHugh Defendants argue that Plaintiff has not pled facts sufficient to establish a claim for fraud against them as is required by Fed.R.Civ.Pro. 9(b), and that Plaintiff has not pled the requisite facts under which it could pierce the corporate veil and recover against the McHughs in their capacity as corporate officers and shareholders. *Memorandum in Support of Motion to Dismiss* [Docket #8] at p. 9.

In response to the motion to dismiss, Cherrydale argues that it has sufficiently pled the McHughs Defendants' participation in the fraudulent conduct and "the corporate veil is not a shield for such wrongful conduct or germane to Cherrydale's claims." *Response in Opposition to Motion to Dismiss* [Docket #16] at pp. 1-2. According to Plaintiff,

> "Count II of the Complaint sets forth a fraud claim against Club's Choice and the McHughs averring that the defendants entered into the Service Agreements knowing full well they did not intend to abide by the billing agreements. Instead, through a series of fraudulently misrepresentations they misled Cherrydale into relying upon the McHughs' false promises and paying fraudulently inflated invoices fabricated by the McHughs. [ . . . ] The McHughs individually each also engaged in conduct to conceal the fraud and force Cherrydale to pay the over-charges imposed by all defendants. [ . . . ] [citations to complaint omitted]."

*Id.* at pp. 2-3.

Plaintiff states "there is no ambiguity about the averments [of the complaint], nor has Cherrydale sought to pierce the corporate veil to hold the McHughs responsible for acts done solely as officers of Club's Choice as asserted in the instant motion. On the contrary, the averments expressly describe how the McHughs individually participated in the fraudulent conduct and efforts to conceal such conduct." *Id.* at p. 3.

The Complaint can be read as naming the McHugh Defendants in both their individual and corporate capacities.  *See Complaint* at p. 2 (naming Richard W. McHugh and Glen McHugh as "act[ing] individually and on behalf of and with the authority of Club's Choice").  However, given Plaintiff's position in its opposition to the motion for summary judgment, I find that the McHugh Defendants are sued in their individual capacities only.

Federal Standards.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  *Fed.R.Civ.Pro. 12(b)(6)*.  Rule 9(b) applies a heightened pleading standard for claims of fraud, requiring that the plaintiff must "state with particularity the circumstances constituting fraud or mistake."  *Fed.R.Civ.Pro. 9(b)*.

The Third Circuit has recently explained the standard to be applied in deciding a motion to dismiss:

> "A motion to dismiss, pursuant to the plausibility standard, should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.' *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Iqbal*, 129 S.Ct. At 1949 (citing *Twombly*, 550 U.S. at 556). This standard requires that plaintiff allege 'more than a sheer possibility that a defendant has acted unlawfully.' *Id.* (citing *Twombly*, 550 U.S. at 556.)  '[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' *Twombly*, 550 U.S. at 555 (citations omitted)(alteration in *Twombly*)."

*Pilecki-Simko*, 2011 WL 3890975 at *4.

> "After *Iqbal*, district courts must conduct a two-part analysis when evaluating a motion to dismiss for failure to state a claim.
> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."

*Holmes v. Gates*, 403 Fed.Appx. 670, 672-73 (3d Cir. 2010)(quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)).

The Third Circuit has noted that there is a third step in this analysis, an initial step in which the Court "begin[s] by taking note of the elements a plaintiff must plead to state a claim." *Santiago v. Warminster Township,* 629 F.3d 121, 130 n. 7 (3d Cir.2010)(quoting *Iqbal*). See *Pilecki-Simko*, 2011 WL 3890975 at *4 n.16 ("*Iqbal* describes the process as a 'two-pronged approach' but the Supreme Court took note of the elements a plaintiff must plead to state a claim before proceeding to its two-step approach. In *Santiago*, this Circuit deemed the process a three-step approach.").

Rule 9(b) requires that in all averments of fraud, the circumstances must be pled with "particularity in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard against spurious charges of immoral behavior." *Franks v. Food Ingredients International,* CA No. 09-3649, 2010 WL 3046416 at *6 (E.D. Pa. July 30, 2010)(quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). A plaintiff may satisfy this requirement by pleading the date, place or time of the fraud, or otherwise provide special details and substance to the fraud allegations. Plaintiff must allege who made the alleged misrepresentation, to whom, and the general content of the misrepresentation. *Id.*

Discussion.

In its complaint, Plaintiff appears to allege "fraud claims, including fraudulent misrepresentation against the McHughs." *Response in Opposition to Motion to Dismiss* at p. 6. While not entirely clear, I read the complaint as asserting, in addition to the fraudulent misrepresentation claim, a claim that the McHugh Defendants acted "to conceal and further take advantage of such fraudulent conduct [referring to the alleged fraudulent misrepresentations]." *Id.* at p. 7.

Under Pennsylvania law, the elements of fraudulent misrepresentation include: (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result. *See, e.g., Petruska v. Gannon University*, 462 F.3d 294, 310 (3d Cir. 2006), *cert. denied,* 127 S.Ct. 2098 (2007).

Here, Cherrydale has failed to describe a single incident of fraudulent misrepresentation with any amount of detail or particularity. The complaint does not identify who is alleged to have made fraudulent statements (concerning Club's Choice's intent to charge shipping and packaging rates as agreed upon and to prepare proper invoices) in order to induce Cherrydale to enter into the Service Agreements. Nor are any circumstances surrounding these alleged fraudulent statements identified, such as when the alleged statements were made, to whom or in what manner. A bald allegation that the McHughs made false statements at various unspecified points to unnamed personnel at Cherryvale that Club's Choice would charge agreed upon shipping and packaging rates and would provide accurate invoices plainly fails to satisfy the heightened pleading requirements of Rule 9(b).

Nor are the three examples of "the circumstances by which the McHughs sought to conceal and further take advantage of such fraudulent conduct" provided by Cherrydale sufficient to plead fraud. The alleged refusal to release expense reports and to permit access to Cherrydale products in the Club's Choice warehouse, and the rejection of all of Cherrydale's outstanding purchase orders and a threat a trademark violation action, for the purpose of inhibiting Cherrydale from discovering fraudulent overcharges are, as Plaintiff acknowledges, "expressly tied to the agreements and events specifically detailed in Count 1 of the Complaint." *Response in Opposition to Motion to Dismiss* at p. 7. As such, the three examples of alleged fraudulent conduct by the McHugh Defendants are not extrinsic to the contractual relationship between the parties, and as alleged in the complaint, are intertwined in the breach of contract claim. Plaintiff cannot "recast[ ]ordinary breach of contract claims as tort claims." *Giordano v. Claudio*, 714 F.Supp.2d 508, 520(E.D. Pa. 2010)(quoting *Sunburst Paper, LLC v. Keating Fibre Int'l, Inc.*, Civ. A. No. 06-3959, 2006 WL 3097771 at *2 (E.D. Pa. Oct. 30, 2006)). *See Fish Net, Inc. v. ProfitCenter Software, Inc.,* C.A. No. 09-5466, 2011 WL 1235204 at *4-5 (March 31, 2011)(dismissing a fraud claim, under the "gist of the action doctrine," where "the Agreements between the parties are central to, and form the very basis of, the plaintiff's claim for fraud.").

Plaintiff has requested leave to "to file an amended complaint to supplement its well founded and pled averments of fraud against the McHughs." *Response in Opposition to Motion to Dismiss* at p. 2. It does not appear that amendment of the complaint would be frivolous *per se*. *See Franks,* 2010 WL 3046416 at *7 (noting the need to avoid dismissing a possibly meritorious claim based on defects in the pleadings, particularly in a fraud case). I will, therefore, permit Plaintiff to file an amended complaint not inconsistent with this Memorandum and Order within twenty days.

An appropriate order is attached.